UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

PHILIP SUTTON,

Plaintiff,

v.

OFFICER RODRIGUEZ, CAPT. CARDEN, DR. JOON PARKS, DR. RAUL ULLOA, DR. GENDELL, L. DIAZ, and CORRECT CARE SOLUTIONS,

Defendants.
--------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

18-cv-01042 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Philip Sutton ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings claims pursuant to 42 U.S.C. § 1983 against Francisco Rodriguez ("Rodriguez"), Shivaun Carden ("Carden"), Dr. Joon Parks ("Parks"), Dr. Raul Ulloa ("Ulloa"), Dr. Alexis Gendell ("Gendell"), Leandro Diaz ("Diaz"), and Correct Care Solutions ("CCS" and collectively "Defendants"). Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated by Defendants' failure to (1) place Plaintiff in a medical housing block, (2) provide adequate medical care, and (3) protect Plaintiff from an inmate assault.

By motion dated January 16, 2020, Defendants CCS, Parks, Ulloa, and Gendell moved to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 54; Doc. 56, "CCS Br."). By motion dated January 17, 2020, Defendants Diaz, Carden, and Rodriguez moved

separately to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 59; Doc. 61, "Diaz Br."). Plaintiff did not file any opposition to Defendants' motions to dismiss.[1]

For the reasons set forth below the court GRANTS Defendants' motions to dismiss.

**BACKGROUND**

Plaintiff commenced this action on February 5, 2018. (Doc. 2). On March 22, 2018, Plaintiff filed an Amended Affidavit (Doc. 6, "Am. Aff."), and on May 31, 2018, Plaintiff filed an Amended Complaint (Doc. 12, "Am. Compl."). Judge Román, who presided over this action before it was transferred to me on April 3, 2020, found in his Order of Service that Plaintiff's Amended Complaint and Amended Affidavit together constituted Plaintiff's operative pleading. (Doc. 15 at 3). Therefore, the facts, as recited below, are taken from Plaintiff's Amended Affidavit and Amended Complaint.

Plaintiff alleges that on July 1, 2017, he was transported to the Westchester Medical Center after suffering an assault (the "First Assault") at the Westchester County Jail (the "Jail"). (Am. Compl. at 5).[2] At the time of the First Assault, Plaintiff was housed in the A-Block at the Jail. (Pl. Aff. at 1). Due to the severity of Plaintiff's injuries, Plaintiff was scheduled to have surgery "that same week" for a "blowout fracture" and was told he needed one metal plate in his right eyebrow

[1] The briefing schedule set for Defendants' motions to dismiss directed the parties to serve motion papers on each other and then file via ECF all motion papers by January 17, 2020. (Doc. 46). On January 16, 2020, Defendants CCS, Parks, Ulloa, and Gendell filed a certificate of service indicating that Plaintiff was served with Defendants' motion on November 12, 2019. (Doc. 57). On January 17, 2020 Defendants Diaz, Carden, and Rodriguez filed a Rule 12 notice to *pro se* litigant and a certificate of service indicating that Plaintiff was served with Defendants' motion on November 15, 2019. (Docs. 62, 62-1). On January 17, 2020, Defendants Diaz, Carden, and Rodriguez also filed a letter notifying the Court that Defendants had not received opposition to their motion to dismiss. (Doc. 63). The letter was served on Plaintiff. (Doc. 63-1). On March 10, 2020, Judge Román denied Plaintiff's request for *pro bono* counsel and noted that "Defendants recently filed motions to dismiss." (Doc. 65). The March 10 Order was mailed to Plaintiff. (*See* Mar. 10, 2020 Dkt. Entry). Thus, as is clear from the docket, Plaintiff was sent Defendants' moving papers as well as two additional documents notifying Plaintiff that Defendants had moved to dismiss his Amended Complaint.

[2] Page numbers for Plaintiff's Amended Complaint correspond to the page numbers assigned by PACER.

and another metal plate in his right jaw. (Am. Compl. at 5). While it is unclear when exactly Plaintiff had surgery related to the First Assault, Plaintiff alleges he had surgery at some time after July 1, 2017. (*Id.* at 7). Plaintiff does not allege that the medical care he received related to the First Assault was inadequate.

Plaintiff alleges that after he returned to the Jail, "around midnight" on July 1, 2017, Plaintiff was placed in the A-Block, which is a general population housing unit. (*Id.* at 5; Am. Aff. at 1). Plaintiff claims that Parks cleared him to return to the general population, but Ulloa told Plaintiff that he would be transferred to the I-Block, a medical housing unit where inmates can be more closely monitored. (Am. Compl. at 5). Plaintiff states he was never transferred to the I-Block due to inaction by Gendall who is the "overseer of medical" and that the Jail and CCS "failed to place [Plaintiff] in a medical block to get the attention [he] required." (*Id.* at 5, 7). Plaintiff asserts that Parks, Ulloa, and Gendell were all involved in the decision not to send Plaintiff to the I-Block. (Pl. Aff. at 1).

On July 2, 2017, Plaintiff was instead moved to the 3East BSide housing block ("3East"). (*Id*.). Plaintiff asserts that on July 2, 2017, Rodriguez removed Plaintiff from his cell so that Plaintiff could take his 30 minutes of "hygiene" and that Rodriguez "was aware . . . of [Plaintiff's] situation and understood that nobody [was] to be out of their cells while [Plaintiff was] out [of his] cell because of [Plaintiff's] severe injuries." (*Id*.). Nonetheless, when Plaintiff "finish[ed his] hygiene and exited the shower area officer Rodriguez let inmates linger around [Plaintiff's] cell" and Plaintiff was again assaulted (the "Second Assault"). (*Id.* at 2). Plaintiff suffered additional injuries to his head and body including a face laceration from his eye to his mouth. (Am. Compl. at 7). Plaintiff alleges that "[a]s a result" of the Second Assault, Rodriguez was "relie[ved] of his job and [in] other words was fired." (*Id*.). Plaintiff states that after the Second Assault he was

escorted to booking by Carden and the Jail "neglected . . . [to provide him] medical care for twenty to thirty min[utes] or more because the inmates that assaulted [Plaintiff were the] main priority." (*Id*. at 6).

Plaintiff avers that Diaz failed "to maintain good care and safety under his custody" and that CCS "put false documentation in [Plaintiff's] medical records to cover up the wrongful errors." (*Id*.). The wrongful conduct was apparently failing to (1) send Plaintiff to the I-Block after he returned from Westchester Medical Center, (2) provide Plaintiff a cane, and (3) prescribe Plaintiff Oxymetazoline nasal spray. (*Id*.). Plaintiff asserts that, based on these two assaults, one or two other inmates were charged with assault and that both assaults were broadcast on the local news. (*Id*.). Plaintiff seeks $13 million in damages and asks the Court "to take legal action" against Rodriguez and Carden "for the neglect of [his] safety and medical care." (*Id*. at 7).

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal,* 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly,* 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)) (internal quotation marks omitted). Because *pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements, courts must apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing the complaint of an individual represented by counsel. *Smith v. U.S. Dept. of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002). While "[*p*]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty*., No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Cappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, [] 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris,* 572 F.3d at 72)). Therefore, while the Court is

"obligated to draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [the plaintiff] has not pled." *Chavis*, 618 F.3d at 170.

The Court also has a duty to interpret the pleadings of a *pro se* plaintiff liberally "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Where, as here, a plaintiff has not filed an opposition brief to a defendant's motion to dismiss the Court shall "decide th[e] motion without the benefit of plaintiff's opposition papers, and construe the [c]omplaint in the light most generous to the plaintiff while drawing every reasonable inference in his favor." *Marshall v. City of New York*, No. 10-CV-3137, 2010 WL 4739810, at *1 (S.D.N.Y. Nov. 17, 2010).

**ANALYSIS**

Construing Plaintiff's pleading liberally, as the Court must, the Court analyzes whether Plaintiff has stated a claim under 42 U.S.C. § 1983 for deliberate indifference based upon the failure to treat Plaintiff's serious medical needs or the failure to protect Plaintiff from the inmates who assaulted him in the Second Assault. Separately, the Court will consider a *Monell* municipal liability claim. For the reasons set forth below, the Court finds that Plaintiff has failed to state a claim for relief and grants Defendants' motions to dismiss.

## I. Deliberate Indifference to Serious Medical Needs

Plaintiff identifies himself as a "convicted and sentenced prisoner."[3] (Am. Compl. at 2). Thus, Plaintiff's deliberate indifference claims are raised pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Darnell*, 849 F.3d at 29. While the "Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care . . . not every lapse in medical care is a constitutional wrong." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer*, 511 U.S. at 832, 834). A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test.

[3] One set of Defendants asserts that Plaintiff was a pretrial detainee (Diaz Br. at 7) while the other set of Defendants asserts that Plaintiff was a convicted prisoner (CCS Br. at 4). A pretrial detainee's § 1983 claim of unconstitutional conditions of confinement are analyzed under the Due Process Clause of the Fourteenth Amendment, while a convicted prisoner's claims for unconstitutional conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). While the standards under the Eighth and Fourteenth Amendment are substantially similar, prong two of the deliberate indifference test under the Fourteenth Amendment is more favorable to a plaintiff. The second prong of the deliberate indifference test under the Eighth Amendment requires a plaintiff to prove that a defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 32 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Therefore, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citing *Farmer*, 511 U.S. at 837). Under the Fourteenth Amendment, however, a pretrial detainee must prove only that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to health or safety." *Id.* at 35 (emphasis added). Therefore, under the second prong of the Fourteenth Amendment deliberate indifference test a defendant need not actually draw the inference that a plaintiff was at risk of serious harm so long as the defendant "should have known" that the plaintiff was at risk of such harm. *See Maldonado v. Town of Greenburgh*, No. 18-CV-11077, 2020 WL 2521450, at *7 (S.D.N.Y. May 18, 2020). Thus, the proof required under the Fourteenth Amendment to establish the second prong of a deliberate indifference claim is less than the proof required under the Eighth Amendment. Here, the Court applies the Eighth Amendment deliberate indifference standard to Plaintiff's claims based on his identification as a "convicted and sentenced prisoner." The Court notes, however, in an abundance of caution that even if the Fourteenth Amendment standard were applied, Plaintiff's claims would likewise fail because Plaintiff's deliberate indifference claims are dismissed based on Plaintiff's failure to satisfy the objective prong of the deliberate indifference standard which is the same under the Eighth and Fourteenth Amendments. *See Darnell*, 849 F.3d at 30.

The first prong is objective and requires that the alleged deprivation in medical care be "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834). A deprivation in medical care is sufficiently serious if (1) "the prisoner was actually deprived of adequate medical care" and (2) "the inadequacy in medical care is sufficiently serious." *Id.* at 279–80. The latter inquiry "contemplates a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

If a plaintiff alleges that he received no medical care for his medical condition "courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir.2003)). If, however, a plaintiff acknowledges that he received some medical care related to the underlying condition, but that the care he received was inadequate, "the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith*, 316 F.3d at 185); *see also Smith*, 316 F.3d at 186 ("[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition considered in the abstract, that is relevant for Eighth Amendment purposes."). If a plaintiff alleges that his medical care was delayed the court examines "whether the delay itself created a risk of harm." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (citing *Smith*, 316 F.3d at 185–86). To determine whether a delay in treatment created a risk of harm, the "absence of adverse medical effects or demonstrable physical injury" are factors "that may be used to gauge the severity of the medical need at issue." *Id.* (citing *Smith*, 316 F.3d at 187).

The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. *Id.* A defendant had a sufficiently culpable state of mind if he "acted or failed to

act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (quoting *Salahuddin*, 467 F. 3d at 280).

Additionally, a prerequisite for any individual liability claim under § 1983 is establishing that a defendant was "personal[ly] involve[ed] in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

Construing Plaintiff's complaint liberally, Plaintiff alleges that Defendants were deliberately indifferent to his medical needs because Defendants (1) did not place Plaintiff in a medical housing block after he received treatment for the First Assault, (2) delayed treatment of Plaintiff after the Second Assault, and (3) did not give Plaintiff a cane or oxymetazoline nasal spray. The Court analyzes Plaintiff's deliberate indifference to serious medical needs allegations seriatim.

First, after Plaintiff's First Assault, Plaintiff was taken to the Westchester Medical Center and allegedly told that he had a facial fracture which required that metal plates be implanted in his right eyebrow and right jaw. (Am. Compl. 5). Plaintiff asserts that he was scheduled for surgery "that same week" and at some point thereafter Plaintiff had surgery. (*Id*. at 5, 7). Plaintiff does not allege that the medical treatment he received after the First Assault was either inadequate or delayed. Nor does Plaintiff allege that any of the Defendants were involved in Plaintiff's medical care related to the First Assault. Rather, Plaintiff alleges that after he returned from the Westchester Medical Center on July 1, 2017 he should have been housed on the I-Block, "which is a medical block for close monitoring," but that instead Plaintiff was placed back in the general population. (*Id*.). Defendants Parks, Ulloa, Gendell, and CCS were allegedly involved in the decision to house Plaintiff in 3East and not the I-Block. (*Id.* at 5 ("Dr. Joon Parks cleared [Plaintiff] to go back to general population"); *id.* ("[I]f you take a close look at my medical records[,] Dr. Raul Ulloa

medical director discussed and made very clear that after coming back from Westchester [M]edical Center I would be transfer[ed] to I-Block . . . which never took place"); *id.* ("Dr. Gendell-Administrator is the overseer of medical and at fault[] because Dr. Gendell didn't take action when this error took place[] after coming back from the Westchester Medical Center."); *id.* at 5, 7 ("It is important to note that the correctional facility and [CCS] failed to place me in a medical block to get the attention I required"); *see also* Am. Aff. at 1 ("I should have been placed on a medical block which is (I-Block) because of my severe trama [sic] to the head alone; but, was cleared by medical staff: Dr. Joon Parks-Medical Physician, Dr. Raul Ulloa-Medical Director and also Dr. Gendell-Administrator.")).

Defendants argue that Plaintiff has "fail[ed] to describe his post-surgical condition, let alone allege facts showing that [his] condition constituted a serious medical need requiring placement in the 'medical block." (CCS Br. at 7). The Court agrees.

Regarding the First Assault, the Court finds that Plaintiff has not established, as a matter of law, that any deprivation in medical care as a result of Plaintiff being housed in 3East was "sufficiently serious" and therefore no constitutional violation lies. Plaintiff acknowledges that he received treatment after the First Assault. Construing Plaintiff's pleading in the light most generous to him, Plaintiff alleges that he received inadequate medical care related to the First Assault because he was not housed in the medical housing block. In such a situation, the court's determination of whether any deprivation in medical care was "sufficiently serious" focuses on the alleged lapse in treatment and not on "the prisoner's underlying medical condition alone." *See Salahuddin,* 467 F. 3d at 280. Assuming *arguendo* that Plaintiff's underlying medical condition—a facial fracture that required surgery and the implant of two metal plates in Plaintiff's face—

standing alone was sufficiently serious, Plaintiff has failed to allege any delay, interruption, or lapse in his medical care sufficient to satisfy the objective prong of a deliberate indifference claim.

Plaintiff alleges that he was scheduled to have surgery the "same week" he went to the Westchester Medical Center for treatment. (Am. Compl. at 5). And, in fact, at some point Plaintiff had surgery related to the First Assault. (*Id.* at 7). Plaintiff does not allege that the decision to house Plaintiff in general population as opposed to the medical housing unit in any way delayed or interrupted the scheduled surgery. Plaintiff also does not allege that the decision to house Plaintiff in general population resulted in any adverse medical effects or an increase in the severity of the injuries suffered during the First Assault. *See Valdiviezo*, 752 F. App'x at 32. While Plaintiff expresses a clear desire to be housed in the medical housing block following the First Assault, Plaintiff's pleading does not include sufficient facts from which the Court can conclude that Plaintiff has plausibly alleged a deliberate indifference claim related to the medical treatment received after the First Assault. Accordingly, Plaintiff's deliberate indifference claim related to the decision to house Plaintiff in the general population after the First Assault is dismissed.[4]

Second, Plaintiff alleges that he received inadequate medical care after the Second Assault during which Plaintiff suffered "additional injuries to [his] head and body as well as a laceration cut from the corner of [his] mouth to the bottom of [his] eyes." (Am. Compl. at 6–7). Specifically, Plaintiff claims that Defendant Carden "neglected [Plaintiff] of medical care for 20 to 30 min[utes] or more because the inmates that assaulted [Plaintiff were the] main priority to see medical." (*Id.* at 6; *see also* Am. Aff. at 2 (alleging that Plaintiff was placed in booking "[f]or 20–30 min[utes] without medical care . . . because the inmates that assaulted [Plaintiff were the] main priority")).

[4] Defendants Parks, Ulloa, and Gendell argue also that they "are not responsible for housing at [the Jail]," and that "the relevant legal authority establishes that inmates do not have a right to housing of their choosing." (CCS Br. at 7). The Court does not address these arguments because Plaintiff's pleading related to the First Assault fails to satisfy the objective prong of a deliberate indifference claim.

Plaintiff does not allege that Defendant Carden or any other Defendant was involved in the medical care Plaintiff received after the Second Assault. Plaintiff acknowledges that he received medical care after the Second Assault. Plaintiff alleges only that the medical care he received was delayed. Thus, the Court's determination of whether any deprivation in medical care was "sufficiently serious" focuses on the delay or interruption in treatment and not on "the prisoner's underlying medical condition alone." *See Salahuddin*, 467 F. 3d at 280. The Court again assumes *arguendo* that Plaintiff's medical condition—a laceration from Plaintiff's mouth to his eye—standing alone was sufficiently serious. The Court finds, however, as a matter of law, that the twenty- or thirty-minute delay in treatment does not rise to the level of a constitutional violation.

Plaintiff does not allege that the delay in treatment after the Second Assault increased the risk of harm, resulted in adverse medical effects, or resulted in additional demonstrable injury. *See Valdiviezo*, 752 F. App'x at 32. The Court finds that the relatively short delay in treatment after the Second Assault is insufficient to establish the objective prong of a deliberate indifference claim. *See Ruggiero v. Way*, No. 19-CV-3631, 2020 WL 5126112, at * 8 (S.D.N.Y. Aug. 31, 2020) (holding plaintiff failed to plead claim under Eighth Amendment for deliberate indifference because plaintiff did "not claim that he had a life-threatening or fast-degenerating condition that was ignored for days, that he ever required major surgery for his injury, that he suffered extreme pain, or that his prognosis was worsened as a result of the 20 to 30 minutes he spent waiting for medical care."). Accordingly, Plaintiff's deliberate indifference claim related to the delay in treatment after the Second Assault is dismissed.

Third, Plaintiff alleges that he received inadequate medical care because he was not given a cane or prescribed Oxymetazoline nasal spray. (Am. Compl. at 6). It is not clear from Plaintiff's complaint whether the cane and nasal spray were required to treat the facial fracture and laceration

received during the First and Second Assaults or whether the cane and nasal spray were needed to treat other unrelated and unidentified medical conditions. The Court simply cannot conclude, based on Plaintiff's pleading and resolving every doubt in Plaintiff's favor, that the failure to provide Plaintiff a cane or nasal spray constituted a sufficiently serious deprivation of Plaintiff's Eighth Amendment right to adequate medical care. Plaintiff's desire for additional medical treatment without any allegations to support that such additional treatment was necessary or related to his alleged injuries does not constitute an Eighth Amendment violation. *See Flynn v. Lee*, No. 11-CV-5311, 2011 WL 5865851, at *5 (S.D.N.Y. Nov. 15, 2011) ("[T]he Eighth Amendment does not grant inmates the right to choose a preferred medical treatment." (citing *Estelle*, 429 U.S. 97 at 103)); *see also Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the facts that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). Accordingly, Plaintiff's deliberate indifference claim related to the failure to provide a cane and nasal spray is dismissed.

Having found that the alleged deprivation in medical care Plaintiff received after the First and Second Assaults fails, as a matter of law, to satisfy the objective prong of an Eighth Amendment violation, the Court dismisses Plaintiff's deliberate indifference to medical needs claim. No purpose would be served by considering the remaining element of Plaintiff's claim—whether any Defendant has the requisite culpable state of mind—as this analysis could not resurrect Plaintiff's claim.

## II. <u>Deliberate Indifference to Plaintiff's Safety</u>

A prisoner can establish a deliberate indifference claim under the Eighth Amendment based upon defendant's failure to protect by proving that (1) the plaintiff "is incarcerated under

conditions posing a substantial risk of serious harm, and (2) that the prison official had a sufficiently culpable state of mind." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer*, 511 U.S. at 840) (internal quotations omitted). While prison officials have an obligation to protect inmates from "substantial risk of serious harm . . . [not] every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability."*Avincola v. Maldonado*, No. 04-CV-3529, 2005 WL 3116760, at *1 (2d Cir. Nov. 22, 2005) (quoting *Farmer*, 511 U.S. at 828). Just as with a deliberate indifference to medical needs claim, a failure to protect claim encompasses an objective and a subjective prong.

Regarding the objective prong, the focus of the Court's inquiry is "not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'" *Randle v. Alexander*, 960 F. Supp. 2d 457, 474 (S.D.N.Y. 2013) (quoting *Farmer*, 511 U.S. at 837). A substantial risk of serious injury is defined as "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Gilmore v. Rivera*, No. 13-CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). The inmate must show that the risk of "actual and imminent" future harm is "so grave that it violates contemporary standards of decency." *Id*. (quoting *Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003); *Braxton v. Nichols*, No. 08-CV-08568, 2010 WL 1010001, at *11, (S.D.N.Y. Mar. 18, 2010)). A substantial risk of harm may be demonstrated by allegations that prison officials knew there was a previous altercation between a plaintiff and his attacker or that a plaintiff has identified his attacker as a known enemy and requested to be kept separate. *See Dublin v. New York City Law Dep't*, No. 10-CV-2971, 2012 WL 4471306, at *5 (S.D.N.Y. Sept. 26, 2012).

The second prong in the failure to protect context is subjective and requires that a plaintiff prove that the defendant "has knowledge that an inmate faces a substantial risk of serious harm

and [the defendant] disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).

Here, Plaintiff's allegations regarding his failure to protect claim are related only to the Second Assault. Specifically, Plaintiff alleges that on July 2, 2017, Defendant Rodriguez removed Plaintiff from his cell so that Plaintiff could take his 30 minutes of "hygiene" and that Rodriguez was "aware . . . of [Plaintiff's] situation and understood that nobody [was] to be out of their cells while [Plaintiff was] out [of his] cell because of [Plaintiff's] severe injuries." (Am. Aff. at 1). Nonetheless, Plaintiff claims that Rodriguez "let inmates linger around [Plaintiff's] cell" and that Plaintiff was again assaulted. (*Id.* at 1–2). Plaintiff asserts that the inmates involved in the Second Assault were different than the inmates involved in the First Assault. (Am. Compl. at 7).

The Court finds that Plaintiff's pleading does not satisfy the objective prong of the failure to intervene standard because Plaintiff has not alleged that "he was incarcerated under conditions posing a substantial risk of serious harm." *Gilmore v. Rivera*, No. 13-CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014). There are no facts alleged indicating that Plaintiff faced an "actual or imminent" risk of future harm when he was housed in the general population prior to the Second Assault. Plaintiff does not assert that the inmates who attacked him were known enemies or that they had been involved in a prior assault with Plaintiff. *See Dublin*, 2012 WL 4471306, at *5. In fact, Plaintiff states explicitly that the inmates involved in the Second Assault were different than the inmates involved in the First Assault. (Am. Compl. at 7). Indeed, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.

Plaintiff alleges only that Rodriguez was "aware . . . of [Plaintiff's] situation and understood that nobody [was] to be out of their cells while [Plaintiff was] out [of his] cell because of [Plaintiff's] severe injuries." (Am. Aff. at 1). Allegedly, despite knowing about Plaintiff's "situation" Rodriguez "let inmates linger around [Plaintiff's] cell." (*Id.* at 1–2). These allegations are insufficient to establish that "the conditions of [Plaintiff's] confinement violate contemporary standards of decency" as is required to satisfy the objective prong under the Eighth Amendment. *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). The Court simply cannot conclude that Plaintiff's pleading raises a plausible failure to protect claim because Plaintiff does not allege that he was at substantial risk of serious harm. *See Randle*, 960 F. Supp. 2d at 471 (finding that a failure to protect claim may lie when "prison officials . . . abuse prisoners directly . . . [or] they indirectly subject prisoners to harm by facilitating abuse at the hands of prisoners' fellow inmates."). That harm to a prisoner occurs in jail does not, on its own, satisfy the objective prong of an Eighth Amendment failure to protect claim. Accordingly, Plaintiff's failure to protect claim against all Defendants except Diaz is dismissed.

As to Defendant Diaz, Plaintiff also appears to bring a failure to protect claim against Diaz asserting that Diaz "failed to maintain good care and safety under his custody." (*Id.* at 6). However, a "defendant may not be held liable under § 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights." *Morgan v. Downstate Corr. Facility*, No. 19-CV-4121, 2019 WL 3553308, at *2 (S.D.N.Y. Aug. 5, 2019) (citing *Ashcroft*, 556 U.S. at 676). Accordingly, Plaintiff's failure to protect claim against all Defendants is dismissed and the Court need not analyze whether Plaintiff has satisfied the subjective prong.

## III. *Monell* Municipal Liability

Section 1983 permits a Plaintiff to assert a claim against a municipality pursuant to *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 660 (1978). The Court in *Monell* held that a municipality can be liable under § 1983 if a Plaintiff proves that "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. A plaintiff can state a *Monell* claim by alleging, and ultimately proving, three things: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Proof of the existence of a municipal policy or custom is required because a plaintiff must demonstrate that "the municipality took some action beyond merely employing the [allegedly] misbehaving officers." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 (S.D.N.Y. 2013) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). There are several ways in which a Plaintiff can demonstrate that an official policy or custom existed including:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Id.*

Here, the Court has already established that Plaintiff's allegations do not allege a violation of a constitutional right. Therefore, Plaintiff's *Monell* claim can be dismissed on that ground alone.

The Court finds separately, however, that Plaintiff has failed to state a *Monell* claim against CCS,[5] Defendant Diaz, or any other Defendant sued in their official capacity[6] because Plaintiff has failed to identify a municipal policy.[7] Construing Plaintiff's pleading liberally, Plaintiff appears to identify two CCS policies which led to an alleged violation of Plaintiff's constitutional rights. Plaintiff alleges that CCS (1) "put false documentation in [Plaintiff's] medical records to cover up . . . wrongful errors" and (2) "failed to place [Plaintiff] in a medical block to get the attention [Plaintiff] required." (Am. Compl. at 6, 7). As to Diaz, Plaintiff alleges that Diaz "failed to maintain good care and safety under his custody." (*Id.* at 6). These allegations are insufficient to establish a municipal policy. "[T]he mere assertion that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)). Typically, in order to establish an inference that a municipality's allegedly unconstitutional policy or custom was so widespread as to be the official policy, a plaintiff must identify multiple incidents in which the identified policy was implemented. *See Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002).

---

[5] "[T]he Court assumes CCS . . . to be a state actor[] such that *Monell* would apply to th[is] private entit[y] providing medical care to state inmates. Various courts in the Second Circuit have adopted this approach." *Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *12 (S.D.N.Y. Mar. 29, 2016) (collecting cases).

[6] Plaintiff identifies Diaz as warden of the Jail. (Am. Compl. at 6). A *Monell* claim can lie against a municipal official sued in his official capacity, if the Plaintiff alleges that the municipal official has "final policymaking authority" and implemented the municipality's allegedly unconstitutional official policy or custom. *See Joseph v. NYC Dep't of Corr.*, No. 20-CV-1676, 2020 WL 2128860, at *3 (E.D.N.Y. May 5, 2020) (citing *Doe v. City of New York*, No. 18-CV-670, 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018)). A warden is a municipal official that may have final policymaking authority. *Id.* The Court notes, however, that it is unclear whether Diaz is actually the warden of the Jail (*see* Diaz Br. at 1 (identifying Diaz as "Deputy Commissioner")) and, in any event, Plaintiff does not allege that Diaz, or any other Defendant, has final policymaking authority.

[7] Plaintiff cannot bring a *Monell* claim against the individual Defendants in their individual capacities because *Monell* municipal liability does not extend to individuals. *See Chamberlain*, 986 F. Supp. 2d at 390 ("The Second Circuit has established a two-pronged test that a plaintiff must satisfy before recovering *from a municipality* under Section 1983.") (emphasis added).

Plaintiff here does not assert that any other inmate at the Jail was affected by the identified municipal policies.

Plaintiff's *Monell* claim is premised on mere conclusory allegations that Defendants' actions constitute an impermissible municipal policy. Such allegations are insufficient to state a claim under *Monell*. *See McClean v. Cty. of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *23 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom.*, *McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019) (dismissing plaintiff's *Monell* claim because plaintiff "offers only conclusory allegations . . . amounting to deliberate indifference. He provides no facts to plausibly support this conclusion." (internal citations and quotations omitted)). Accordingly, because Plaintiff has not identified a municipal policy and has not alleged that he suffered a constitutional violation, Plaintiff's *Monell* claim is dismissed.[8]

**CONCLUSION**

Based on the foregoing, the Court GRANTS Defendants' motions to dismiss without prejudice. Plaintiff may file a Second Amended Complaint within 30 days from the date of this Order to address the pleading deficiencies identified herein. Failure to file a Second Amended Complaint within 30 days will result in dismissal of this action.

Plaintiff is reminded that if he chooses to file a Second Amended Complaint, the Second Amended Complaint will completely replace, not supplement, the original complaint. Therefore,

[8] To the extent Plaintiff asserts any New York state law claims, those claims are dismissed because Plaintiff failed to comply with New York notice of claim requirements. "Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality [or any officer, appointee or employee thereof] and such notice of claim must be served within 90 days of the claim arising." *Spence v. Bukofzer*, No. 15-CV-6167, 2017 WL 1194478, at *11 (S.D.N.Y. Mar. 30, 2017) (citing N.Y. Gen. Mun. Law § 50-e). The notice of claim requirements apply to state law claims brought in federal court and "failure to comply with these requirements 'ordinarily requires a dismissal for failure to state a cause of action.'" *Id.* (quoting *Hardy v. N.Y. City Health & Hosps. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999)). *Pro se* plaintiffs are not excused from filing notice of claims as a condition precedent to bringing their state law claims in federal court. *Id.*

any facts or claims that Plaintiff wishes to maintain must be included in the Second Amended Complaint.

The Clerk is instructed to terminate the pending motions (Docs. 54, 59). Defendants are directed to mail a copy of this Order to Plaintiff and file proof of service on the docket.

**SO ORDERED:**

Dated: New York, New York
September 8, 2020

Philip M. Halpern
United States District Judge