UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PHILIP SUTTON,

                              Plaintiff,

v.

OFFICER RODRIGUEZ, et al.,

                             Defendants.
-----------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER**

18-CV-01042 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Plaintiff Philip Sutton ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings claims under 42 U.S.C. § 1983 against Officer John Doe ("CO Doe"), Francisco Rodriguez ("Rodriguez"), Shivaun Carden ("Carden"), Dr. Joon Park ("Park"), Dr. Raul Ulloa ("Ulloa"), Dr. Alexis Gendell ("Gendell"), and Leandro Diaz ("Diaz," and collectively, "Defendants") for deliberate indifference to Plaintiff's safety and his serious medical needs.

    Defendants moved to dismiss Plaintiff's First Amended Complaint[1] under Federal Rule of Civil Procedure 12(b)(6), and this Court granted the motions in a Memorandum Opinion and Order dated September 8, 2020 (the "Prior Order").[2] (Doc. 69, "Prior Ord."). The Court also granted Plaintiff leave to replead and file a Second Amended Complaint within thirty days of the date of the Prior Order to correct the deficiencies identified therein. (*Id.* at 19).

---

[1] Plaintiff's Amended Complaint filed on May 31, 2018 (Doc. 12, "FAC") and his Amended Affidavit filed on March 22, 2018 (Doc. 6, "Am. Aff."), together, constitute the First Amended Complaint. (Doc. 15 at 3; Doc. 69 at 2).

[2] The Prior Order is available on commercial databases. *See Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312 (S.D.N.Y. Sept. 8, 2020). However, for ease of reference, the Court cites herein the copy of the Prior Order filed on the docket.

Plaintiff filed a Second Amended Complaint on November 16, 2020.[3] (Doc. 78, "SAC"). The Second Amended Complaint names the same individual defendants, drops one corporate defendant, and adds a "John Doe" defendant. Instead of bringing his claims under the Eighth Amendment as a convicted prisoner, in the Second Amended Complaint, Plaintiff pleads his claims under the Fourteenth Amendment alleging that he was a pre-trial detainee at the time of the misconduct alleged. (SAC at 2).[4]

By motion dated January 14, 2021, Defendants Park, Ulloa, and Gendell moved to dismiss Plaintiff's Second Amended Complaint (Docs. 83-85), and on January 19, 2021, Defendants Diaz, Carden, and Rodriguez moved separately to dismiss Plaintiff's Second Amended Complaint (Docs. 87-89). Defendants' motions were both brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff did not file any opposition to Defendants' motions to dismiss.[5]

For the reasons set forth below Defendants' motions to dismiss are GRANTED.

---

[3] Plaintiff had requested an extension of time to file the Second Amended Complaint, which the Court granted to November 9, 2020. (Doc. 73). The Second Amended Complaint was ultimately filed on November 16, 2020, although it is dated November 6, 2020. (SAC at 15).

[4] Citations to the Second Amended Complaint correspond to the pagination generated by ECF.

[5] Plaintiff's brief in opposition to Defendants' motions was due February 22, 2021 (Doc. 82). The docket indicates that a copy of the Court's Order setting the briefing schedule was mailed to Plaintiff. (Dec. 15, 2020 Entry). On January 14, 2021, Defendants Park, Ulloa, and Gendell filed a certificate of service indicating service of the motion on Plaintiff. (Doc. 86). On January 19, 2021, Defendants Diaz, Carden, and Rodriguez filed an affidavit of service of their motion papers on Plaintiff (Doc. 88-10), and a Rule 12 notice to *pro se* litigant indicating service of the motion on Plaintiff. (Doc. 90). Plaintiff did not file opposition papers. On March 5, 2021, Defendants Park, Ulloa, and Gendell filed a letter requesting that the Court deem their motion submitted and unopposed (Doc. 91), and certified that their letter was served upon Plaintiff that day (Doc. 92). On March 8, 2021, the Court *sua sponte* extended Plaintiff's time to oppose the motions to April 9, 2021, warned Plaintiff no further extensions would be granted, and cautioned that if Plaintiff failed to file opposition by April 9, 2021, the motions would be deemed fully submitted and unopposed (Doc. 93). The Court's March 8, 2021 Order was mailed to Plaintiff. (*See* Mar. 8, 2021 Entry). Thus, as is clear from the docket, Plaintiff was sent Defendants' moving papers as well as two additional documents notifying him that Defendants had moved to dismiss his Second Amended Complaint. Accordingly, the Court deems the motions fully submitted and hereby adjudicates them .

The Court assumes the parties' familiarity with the factual allegations as laid out in the Prior Order and incorporates any additional factual allegations where appropriate *infra*.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Construing Plaintiff's pleading liberally, as it must, the Court analyzes whether Plaintiff has corrected the deficiencies outlined in the Prior Order to state a claim under 42 U.S.C. § 1983 for deliberate indifference based upon the failure to treat Plaintiff's serious medical needs, the alleged failure to protect Plaintiff from the inmates who assaulted him, any *Monell* municipal liability claim, and New York state law claims. For the reasons set forth below, the Court finds that Plaintiff has not done so, and thus grants Defendants' motions to dismiss.

I. John Doe Defendant

As an initial matter, Plaintiff purports to add a new defendant, CO Doe, and asserts a claim against him for failure to protect Plaintiff from the First Assault[6] that occurred on July 1, 2017. (SAC at 5, 7-8). The Second Amended Complaint marks the first time that Plaintiff mentions CO Doe and asserts a claim concerning the First Assault. Plaintiff's purported new claim against this new party is barred by the applicable statute of limitations, which expired on July 1, 2020. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations."); *France v. Cty. of Westchester*, No. 12-CV-5576, 2016 WL 1270259, at *6 (S.D.N.Y. Mar. 30, 2016) (failure to protect claims accrue on the date of the alleged assault).

An otherwise untimely amendment will survive if it is deemed to "relate back" to the original complaint. *See* Fed. R. Civ. P. 15(c)(1). The federal standard for relation back when an amendment to the pleadings adds a party to an action, set forth in Rule 15, provides, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted. . .

---

[6] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Prior Order.

." Fed. R. Civ. P. 15(c)(1)(C). The relation back doctrine does not save the time-barred claim against CO Doe because "Plaintiff failed to reserve his right to add a new party by naming a 'John Doe' defendant within the limitations period and, as a result, the proposed amendment would not 'change[ ] the party or the naming of the party against whom a claim is asserted,' Fed. R. Civ. P. 15(c)(1)(C), but rather would add a new party altogether." *Essani v. Earley*, No. 13-CV-3424, 2018 WL 3785109, at *9 (E.D.N.Y. Aug. 9, 2018), *adopted by* 2018 WL 4100483 (E.D.N.Y. Aug. 28, 2018); *see also Pikos v. Liberty Maint., Inc.*, No. 09-CV-4031, 2015 WL 6830670, at *3 (E.D.N.Y. Nov. 6, 2015) ("Courts in this Circuit have held relation back is only permitted where plaintiff named the wrong party in the original complaint, and not where plaintiff named one but not all of the right defendants.").

Where, as here, newly added claims are based on different conduct attributable to different individuals than the claims set forth in the original pleading, they will not relate back. *See France*, 2016 WL 1270259, at *6; *see also Brown v. Leonarde*, No. 11-CV-0035, 2013 WL 1866851, at *7 (W.D.N.Y. May 1, 2013) (finding "that the retaliation and other claims first pled in the [a]mended [c]omplaint do not relate back to the assault claim pled in the original [c]omplaint because while the retaliation claims are based on [the] plaintiff's and his family's complaints about the assault they do not arise out of the original factual situation pled in the complaint"); *Griffith v. Sadri*, No. 07-CV-4824, 2009 WL 2524961, at *4 (E.D.N.Y. Aug. 14, 2009) (concluding that the "plaintiff's excessive force claim does not 'relate back' to his earlier complaint," which "assert[ed] an illegal arrest and prosecution for lack of probable cause"). Accordingly, Plaintiff's failure to protect claim against CO Doe concerning the First Assault, even if he could be named at this juncture, would be untimely and must be dismissed.

## II. Section 1983 Claims

Construing Plaintiff's Second Amended Complaint liberally, as the Court must, Plaintiff alleges that Defendants exhibited deliberate indifference to his safety by failing to protect him from inmate assaults. Plaintiff further alleges that Defendants were deliberately indifferent to his medical needs because Defendants: (1) did not place Plaintiff in a medical housing block after he received treatment for the First Assault; (2) delayed treatment of Plaintiff after the Second Assault; and (3) did not give Plaintiff Ensure, a soft food diet, or certain medications.

Plaintiff, in his earlier pleading, identified himself as a "convicted and sentenced prisoner." (Doc. 2 at 2). Plaintiff, however, in the Second Amended Complaint alleges that he was a pre-trial detainee at the time of the misconduct alleged. (SAC at 2). The import of these allegations, as discussed in the Prior Order, is that "[a] pretrial detainee's § 1983 claim of unconstitutional conditions of confinement are analyzed under the Due Process Clause of the Fourteenth Amendment, while a convicted prisoner's claims for unconstitutional conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment." (Prior Ord. at 7 n.3). Plaintiff's claims are thus now pled under the Fourteenth Amendment.[7] This amendment to his pleading is of no moment, because the same deficiencies highlighted in the Prior Order persist in the Second Amended Complaint. Because Plaintiff's Second Amended Complaint fails to correct the deficiencies which resulted in the dismissal of his First Amended Complaint, and any newly pled allegations fail to plausibly state a claim for relief, the Second Amended Complaint must be dismissed.

---

[7] Although Plaintiff originally pled an Eighth Amendment claim, in granting the motions to dismiss the Amended Complaint, the Court noted "that even if the Fourteenth Amendment standard were applied, Plaintiff's claims would likewise fail because Plaintiff's deliberate indifference claims are dismissed based on Plaintiff's failure to satisfy the objective prong of the deliberate indifference standard which is the same under the Eighth and Fourteenth Amendments." (*Id*. (citing *Darnell*, 849 F.3d at 30)).

A. Deliberate Indifference to Plaintiff's Safety

The standards to establish deliberate indifference to Plaintiff's safety under the Eighth and Fourteenth Amendments are substantially similar. Under the Fourteenth Amendment, a pretrial detainee can demonstrate that prison officials failed to protect the inmate by showing that (1) "the inmate [was] incarcerated 'under conditions posing a substantial risk of serious harm;' and [(2)] the prison official showed 'deliberate indifference to inmate health or safety.'" *Rembert v. Cheverko*, No. 12-CV-9196, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).

The first prong of this test is objective and requires the plaintiff to show that his conditions of confinement "pos[ed] an unreasonable risk of serious damage" to his safety. *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017). When determining whether "the risk of an inmate's violence against other inmates is sufficiently serious[] to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm." *Luckey v. Jonas*, No. 18-CV-8103, 2019 WL 4194297, at *4 (S.D.N.Y. Sept. 4, 2019) (quoting *Blake v. Kelly*, No. 12-CV-7245, 2014 WL 4230889, at *5 (S.D.N.Y. Aug. 26, 2014)). The detainee must further demonstrate that the "unreasonable risk was 'actual or imminent.'" *Vickers-Pearson v. City of New York*, No. 18-CV-8610, 2020 WL 5732028, at *5 (S.D.N.Y. Sept. 24, 2020) (quoting *Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003)).

Ordinarily, a plaintiff can demonstrate that he faced a substantial risk of serious harm by alleging that "there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker." *Luckey*, 2019 WL 4194297, at *4 (quoting *Gilmore v. Rivera*, No. 13-

CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014)). As to the second prong of the failure to protect claim, the plaintiff must demonstrate that prison officials "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F. 3d at 35.

Plaintiff, in the Second Amended Complaint, makes no material amendments to the allegations pled against Carden and Rodriguez in the First Amended Complaint. (*Compare* FAC at 6; Am. Aff. at 1-2, *with* SAC at 11-13). Plaintiff's claim of deliberate indifference alleged against Carden and Rodriguez for failure to protect fails to satisfy the objective prong of the standard for the same reasons set forth in the Prior Order. (*See* Prior Ord. at 15-16).

As regards Diaz, most of Plaintiff's allegations are the same as those set forth in the Amended Complaint; Plaintiff adds, however, regarding the First Assault, that Diaz knew that there would be a threat to Plaintiff's safety because he had approved Plaintiff's transfer to A-Block two months before the First Assault. (SAC at 5, 8-9, 13). Plaintiff alleges that prior to that transfer, unidentified inmates verbally threatened him; out of concern for his safety, he refused to lock-in to his cell. (*Id*. at 8). Because of his failure to lock-in, Plaintiff was disciplined and put on keeplock status. (*Id*. at 8-9). Plaintiff alleges that he was transferred to A-Block in keeplock for those two months prior to the First Assault for disciplinary reasons. (*Id*. at 5, 7, 8-9). He alleges that he was concerned about his safety in A-Block and communicated that concern to an unidentified Captain. (*Id*. at 8). Plaintiff's allegations against Diaz do not establish an unreasonable risk of inmate violence that was "actual or imminent." Plaintiff does not allege any previous altercation between him and an attacker, any complaint by Plaintiff to Diaz regarding a previous altercation, nor any

9

request made to Diaz that Plaintiff be separated from any attacker. Accordingly, Plaintiff's new allegations against Diaz fail to meet the objective prong of the deliberate indifference test and do not save Plaintiff's claim against him for failure to protect.

Plaintiff's failure to protect claim alleged against CO Doe is untimely, as discussed above, and also fails substantively for many of the same reasons his allegations against the other Defendants fail. Specifically, Plaintiff complains that CO Doe failed to protect him from the First Assault because, while Plaintiff was on keeplock status, CO Doe violated a policy of the Westchester County Jail that keeplock inmates are not to mix with general population inmates by directing Plaintiff to take lunch while other A-Block inmates were out of their cells. (*Id*. at 5, 7-8). The allegation that Plaintiff was on keeplock status for disciplinary reasons does not suggest there was an unreasonable risk of serious damage to Plaintiff's safety or any unreasonable risk of inmate violence that was "actual or imminent." For these additional reasons, Plaintiff's allegations against CO Doe fail to plausibly state a claim of deliberate indifference to Plaintiff's safety.

Plaintiff does not make any allegations against Defendants Park, Ulloa, or Gendell for failure to protect him from the inmate assaults. As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). "Moreover, as recently emphasized by the Second Circuit, the fact that a defendant is a supervisor is not enough to impute personal involvement onto that actor." *Gunn v. Annucci*, No. 20-CV-02004, 2021 WL 1699949, at *7 (S.D.N.Y. Apr. 29, 2021) (citing *Tangreti v. Bachmann*,

983 F.3d 609, 618 (2d Cir. 2020); *see also Greene v. Sampson*, No. 18-CV-6103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021).

Accordingly, Plaintiff's claims of deliberate indifference to his safety asserted against Defendants in the Second Amended Complaint are dismissed.

B. <u>Deliberate Indifference to Plaintiff's Serious Medical Needs</u>

With respect to Plaintiff's medical indifference claims, like failure to protect claims, "[t]o state a deliberate indifference claim under the Fourteenth Amendment, plaintiff's allegations must satisfy two prongs: an objective prong and a *mens rea* prong." *King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018). Under the first prong, the inmate's medical needs must be objectively "serious." *Flemming v. Velardi*, No. 02-CV-4133, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To determine whether an inmate's medical needs are sufficiently serious, courts consider "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 701-02 (2d Cir. 1998) (internal quotations omitted).

Under the second prong, "the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). A plaintiff can demonstrate deliberate indifference by alleging facts that demonstrate that a defendant "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Chance*, 143 F.3d at 702 (citing *Farmer*, 511 U.S. at 837); *see also Estelle*, 429 U.S. at 104 (finding that a plaintiff can demonstrate

deliberate indifference by alleging that a defendant "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[ed] with the treatment once proscribed.").

As in the First Amended Complaint, Plaintiff does not in the Second Amended Complaint allege that the decision to house him in general population as opposed to the medical housing unit in any way delayed or interrupted his scheduled surgery or that the housing in general population resulted in any adverse medical effects or an increase in the severity of the injuries suffered during the First Assault. (Prior Ord. at 9-10). Accordingly, because Plaintiff failed to remedy the deficiencies in his deliberate indifference claim related to the medical treatment received after the First Assault, the claim is dismissed.

Likewise, Plaintiff's allegation that he received inadequate medical care after the Second Assault because he was placed in booking for "30 min[ute]s or more" does not rise to the level of a constitutional violation. Plaintiff's Second Amended Complaint fails to correct the same deficiencies highlighted in the Prior Order concerning the medical treatment received after the Second Assault and thus, the claim is dismissed. (*See* Prior Ord. at 11-12).

The First Amended Complaint included allegations concerning the failure to provide Plaintiff with a cane and nasal spray. Plaintiff has abandoned those allegations in the Second Amended Complaint and instead, makes new allegations concerning the failure to provide him with Ensure, a soft food diet, and medication. (SAC at 9-10). Plaintiff alleges that after returning from Westchester Medical Center following the First Assault, he complained of dizzy spells and hunger pains. (*Id*. at 9-10). Plaintiff alleges that he requested a soft food diet from an unidentified nurse, who said she would pass his request on to Dr. Park. (*Id*.). Plaintiff further alleges that he in fact received the requested diet three days after surgery. (*Id*.). Plaintiff also claims he did not receive certain medications, and that his "face had a hard time healing." (*Id*.). Plaintiff alleges

generally that Park and Ulloa knew that he was not receiving a soft food diet and medication, but they did not rectify the situation. (*Id*. at 10).

Plaintiff's complaints of hunger and dizziness, and that his face had a hard time healing, simply do not rise to the level of risk of death, degeneration, or extreme pain required to state a claim for deliberate indifference. *Gilmore v. Rivera*, No. 13-CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014) (a substantial risk of serious injury is defined as "a condition of urgency, one that may produce death, degeneration, or extreme pain."). Although Plaintiff alleges that he suffered "major head an[d] face trauma, broken jaw bone, broken cheek bone, broken eye socket, broken blood vessels in eye, cerebral swelling to head and face [and] severed neve in face," (SAC at 7), these alleged injuries were caused by inmate assaults, not from any diet or medication delays.

Plaintiff refers to the delay in receiving a soft food diet as "a carelessness act." (*Id*. at 11). Plaintiff does not allege a sufficient objective medical need related to the three-day delay in a soft food diet. *See Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (where an inmate alleges "denial of medical care [] based on a temporary delay or interruption in treatment," courts assess "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition."); *see also Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) ("Mere negligence or inadvertent failure to provide a medically necessary diet is not a constitutional violation"); *Crichlow v. Fischer*, No. 17-CV-00194, 2017 WL 6466556, at *14 (N.D.N.Y. Sept. 5, 2017) (limited denial of food does not rise to level of constitutional significance; inmate did not allege "total deprivation of food for an extended period of time"), *adopted by* 2017 WL 6459512 (N.D.N.Y. Dec. 18, 2017).

As regards the delay of unknown duration in receiving certain medications, this is not a case where any of the Defendants are alleged to have personally denied Plaintiff's requests for

medication. The allegations in the Second Amended Complaint do not plausibly suggest that any Defendants intentionally deprived Plaintiff of medication or recklessly failed to act with reasonable care. *See Dumel v. Westchester Cty.*, No. 19-CV-2161, 2021 WL 738365, at *9 (S.D.N.Y. Feb. 25, 2021) (dismissing complaint against Ulloa and Gendell because detainee did not plausibly allege intentional deprivation of medication); *see also White v. Westchester Cty.*, No. 18-CV-730, 2018 WL 6726555, at *13 (S.D.N.Y. Dec. 21, 2018) (dismissing complaint against Ulloa and Gendell because the complaint did "not allege that Dr. Ulloa and Dr. Gendell themselves delayed the administration of [the] [p]laintiff's medications"). Moreover, the bare assertion that a medication error slowed Plaintiff's recovery does not establish deliberate indifference. *See Smith v. U.S. Dep't of Just.*, No. 18-CV-03371, 2021 WL 2480412, at *8 (S.D.N.Y. June 17, 2021) (plaintiff's allegations of delay in treatment were insufficient to meet objective prong of deliberate indifference inquiry); *Rodriguez v. Corizon Health Care*, No. 15-CV-5251, 2016 WL 3189960, at *4 (S.D.N.Y. June 6, 2016) (dismissing deliberate indifference claim where plaintiff's "allegations simply reflect[ed] a disagreement between him and his medical practitioners as to whether he was in need of further treatment"), *adopted by* 2016 WL 3766397 (S.D.N.Y. July 11, 2016).

Accordingly, Plaintiff's deliberate indifference claim related to the failure to provide him with Ensure, a soft food diet, and medication is dismissed.

C. *Monell* Municipal Liability and State Law Claims

As in the First Amended Complaint, Plaintiff's allegations in the Second Amended Complaint do not allege a violation of a constitutional right. To the extent Plaintiff intended to assert a *Monell* claim, it can be dismissed on that ground alone. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (where "district court properly found no underlying constitutional violation," it was not necessary to consider claims of municipal liability under *Monell*). In any

event, the allegations in the Second Amended Complaint do not cure the deficiencies identified by the Court in the Prior Order. (Prior Ord. at 17-19). Because Plaintiff again has not identified a municipal policy and has not alleged that he suffered a constitutional violation, to the extent Plaintiff intended to assert a *Monell* claim, it is dismissed.

To the extent Plaintiff asserts any New York state law claims, those claims are dismissed for the same reasons set forth in the Prior Order, as Plaintiff failed to comply with New York notice of claim requirements. (*Id*. at 19, n.9).

## CONCLUSION

Based on the foregoing, Defendants' motions to dismiss Plaintiff's Second Amended Complaint are GRANTED with prejudice, as any amendment would be futile. *See Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) ("District courts should frequently provide leave to amend before dismissing a pro se complaint. However, leave to amend is not necessary when it would be futile." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Additionally, and because Plaintiff has already been given notice and an opportunity to cure the deficiencies in his pleading, but has failed to cure them, leave to replead is also properly denied. *See Smith v. Lioidice*, No. 17-CV-07028, 2021 WL 2689064, at *6 (S.D.N.Y. June 30, 2021); *Cox v. City of New Rochelle*, No. 17-CV-8193, 2020 WL 5774910, at *9 (S.D.N.Y. Sept. 28, 2020).

The Clerk of Court is respectfully requested to terminate the pending motions (Doc. 83; Doc. 87), mail a copy of this Memorandum Opinion and Order to Plaintiff, and to close this case.

**SO ORDERED:**

Dated: White Plains, New York
       July 9, 2021

_____
Philip M. Halpern
United States District Judge

15